

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KAREN B. BALAS,

Plaintiff,

v.                                                  Civil Action No. 2:11cv347

HUNTINGTON INGALLS INDUSTRIES, INC.,

Defendant.

## OPINION AND ORDER

This matter comes before the Court on a motion for judgment on the pleadings. Doc. 6.

On July 26, 2010, Plaintiff Karen B. Balas ("Balas") filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated by Northrup Grumman Corporation ("Northrup Grumman") due to sex discrimination. Doc. 7-1. Balas amended her complaint at some point in October 2010[1] to allege that her supervisor, Bradley Price ("Price"), inappropriately hugged her in January 2010. Doc. 7-2. Each of these complaints was preceded by a letter to the EEOC providing greater detail to Balas's claims against Northrup Grumman. Docs. 12-1, 12-3. These complaints were dismissed on February 25, 2011, and Balas received a "right to sue" letter from the EEOC. Doc. 12-2.

On May 23, 2011, Balas timely filed suit in the Circuit Court for the City of Chesapeake. Doc. 1-1. In her Complaint, Balas raises several claims against Defendant Huntington Ingalls Industries ("Huntington Ingalls"), the successor to Northrup Grumman, regarding her alleged harassment and termination. Id. Specifically, Balas alleges violations of Title VII of the Civil

---

[1] The exact date of this amendment is illegible, both on the date line and on the filing stamp, and seems to be October 10, 20, or 28. This distinction is immaterial to the legal issues at hand.

Rights Act of 1964 ("Title VII"), as well as common-law claims of wrongful discharge, assault and battery, and intentional infliction of emotional distress. Id. at 14–28.

On June 21, 2011, Huntington Ingalls removed the case to this Court. Doc. 1. Huntington Ingalls also filed its Answer on that date. Doc. 2. On June 29, 2011, Huntington Ingalls filed this motion for judgment on the pleadings. Doc. 6. Having received an extension of time, Balas timely filed her response on August 9, 2011. Doc. 11. Huntington Ingalls filed its reply on August 15, 2011. Doc. 14. Therefore, this motion is ripe for decision.

## I. FACTUAL BACKGROUND

In a motion for judgment on the pleadings filed by a defendant, the Court accepts the plaintiff's allegations as true. E.g., Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999). Balas alleges the following:

From April 2006 to February 17, 2010, Balas worked as a designer, and later as a planner, for Northrup Grumman. Doc. 1-1 at paras. 5, 6, 13. During this time, Balas's coworkers made "numerous sexual comments," "massag[ed] one another," and displayed "sexually explicit posters" and "sexually offensive pictures." Id. at para. 5. In December 2008, one of Balas's coworkers, Suzy Mingee, "made false[] sexual remarks about [Balas] to a room full of male employees," which those employees then shared with other coworkers. Id. at para. 9. Balas also claims that she was denied a promotion to the position of Operations Coordinator, and other unspecified promotions, due to sex discrimination. Id. at para. 12.

Price engaged in allegedly harassing conduct towards Balas starting in February 2008. Id. at para. 7. According to Balas, Price

> frequently and repeatedly commented to [Balas] about how much he liked her
> attire and physical appearance; he referred to [Balas] as a "good woman"; he
> recommended that she market foods she prepared and shared; he frequently and
> repeatedly entered [Balas]'s small work space and her personal space; he

> frequently and repeatedly offered to . . . share his lunch with [Balas]; [and] he frequently[ ]talked about his sex life to [Balas] and her co-worker, Ms. Amy Rogers[.]

Id. Starting in April 2008, Price provided detailed accounts of his attraction to Balas to Balas's coworker, Whitney Lassiter. Id. at para. 8. On Valentine's Day 2009, Price gave Balas candy and told her that he wanted to give her a hug, but did not want to get in trouble. Id. at para. 7. In April 2009, Price made sexual overtures towards Balas and suggested that she be moved under another supervisor to facilitate such a relationship. Id. at para. 10. Thereafter, Price regularly made cat calls towards Balas despite her rejection of his advances. Id. On January 4, 2010, Price "trapped [Balas] in her work space and . . . hugg[ed] her against her will." Id. at para. 26.

In August 2009, Price told Balas that there had been a complaint regarding Balas's ripped jeans, and instructed her to go home and change clothes. Id. at para. 11. Balas alleges that male employees regularly wore such jeans and were wearing them at the time, and that she objected to being singled out in this manner. Id.

Balas alleges that throughout her employment, she complained to management about these practices, but nothing was done in response. Id. at paras. 6, 7, 11, 12. On February 17, 2010, Balas's employment was terminated. Id. at 13. Balas alleges that her termination was due to her complaints and because she refused Price's sexual advances. Id. As a result of her experiences, Balas has suffered emotional distress, which requires several medications daily. Id. at para. 28.

## II. COMMON STANDARD OF LAW

In a motion for judgment on the pleadings, courts consider as true the properly pled allegations contained in the Complaint. E.g., Edwards, 178 F.3d at 243–44. Courts also consider as true any exhibits attached to the Complaint. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

To be properly pled, the Complaint must show that the wrongdoing alleged was not merely possible, but plausible. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Conclusory allegations "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A mere "'formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

### III. TITLE VII CLAIMS

#### A. THE PARTIES' POSITIONS

Huntington Ingalls argues that several of the allegations that Balas relies upon in her Title VII claims are barred because they were not raised before the EEOC. Doc. 7 at 3–4. Balas responds that two documents that she filed with the EEOC, which she refers to as her complaint (Doc. 12-1) and amended complaint (Doc. 12-3), contain all of the allegations that she raises in her present suit. Doc. 12 at para. 2. Huntington Ingalls replies that these documents are mere "letters . . . to the EEOC" with questionable authenticity. Doc. 14 at 1.

Huntington Ingalls further argues that any discrete acts that occurred over 300 days before the filing of Balas's EEOC charges were time-barred and not properly before the EEOC. Doc. 7 at 4–5. Balas responds that the violations were not discrete events but part of a "sustained and ongoing discrimination . . . that continued until her employment was terminated." Doc. 11 at para. 2. Huntington Ingalls's reply lists several alleged incidents that it claims were discrete acts ocurring more than 300 days before Balas filed her EEOC complaint. Doc. 14 at 2–3.

#### B. EEOC SCOPE AND TIMELINESS STANDARDS

As an initial matter, the Court lacks subject matter jurisdiction over any of Balas's Title VII claims that are outside the scope of her EEOC charges. Jones v. Calvert Grp., Ltd., 551 F.3d

4

297, 300 (4th Cir. 2009) (holding that such claims must be dismissed without prejudice). However, a time-barred "discriminatory allegation may still constitute relevant background evidence for valid claims." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

For a claim to be within the scope of an EEOC charge, it must be "stated in the initial charge, . . . reasonably related to the original complaint, . . . [or] developed by reasonable investigation of the original complaint." Evans, 80 F.3d at 963 (citation omitted). "[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). The primary purposes of this requirement are to provide the defendant with notice of the charges and an opportunity to correct the problem, and to aid the EEOC in pursuing the claims. Id. at 510. Moreover, "because administrative charges are not typically completed by lawyers, they must be construed liberally." Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011) (citation omitted).

If an incident occurred more than 300 days before the filing of the plaintiff's EEOC charge, it can be raised in a subsequent lawsuit only if it were part of a continuing violation, and at least one act in that violation occurred within the 300-day statute of limitations. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). This is true even if that incident were reasonably related to an incident that was timely filed with the EEOC. Id. at 113. Incidents are part of a continuing violation where they are "part of a single, ongoing pattern of discrimination." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). A hostile work environment constitutes a continuing violation, whereas termination or failure to promote are discrete acts which must be raised within 300 days. Nat'l R.R. Passenger Corp., 536 U.S. at

114–15. However, a claim of a hostile work environment due to a supervisor's actions involves "a different set of individuals with different ranks and responsibility" from a claim of a hostile work environment due to coworkers' actions. Chacko, 429 F.3d at 511.

## C. EEOC Scope and Timeliness Analysis

As an initial matter, the Court must determine whether Balas's letters to the EEOC (Docs 12-1, 12-3) properly raised the claims at issue. The Fourth Circuit has held that "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge." Sloop v. Mem. Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (citation omitted). Nor could the letters, addressed solely to the EEOC, have provided Northrup Grumman notice of their contents. Id. Moreover, Balas's letters were filed prior to her amended EEOC charge. Even if the Court were to construe these letters as valid charges or valid amendments to her other charges, they were superseded by the amended charge that was filed no earlier than October 10, 2010 (Doc. 7-2). Cf. Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) (noting that an amended pleading generally supersedes, and thereby nullifies, the original pleading). Therefore, the Court will only consider Balas's amended EEOC charge (Doc. 7-2) in determining the scope of her EEOC complaint.

Balas's original EEOC charge was clearly limited to her termination: Balas listed February 17, 2010—the date of her termination—as both the "earliest" and the "latest" date of discrimination. Doc. 7-1. The "continuing action" box was left blank. Id. Although this charge mentioned the allegation that Balas was sent home for wearing ripped jeans, this allegation appears to have been intended as evidence that her termination was discriminatory or retaliatory. Id.

The amended charge added the allegation that Price hugged her in January 2010 and omitted listing the earliest date that discrimination took place, but was otherwise unchanged from Balas's original charge. Doc. 7-2. Therefore, even construing Balas's charge liberally, she only alleged discriminatory or retaliatory termination and harassment by her supervisor. This is true even if the "jeans incident" is construed as a separate claim of supervisory harassment (as is possible because the starting date was left blank on the amended charge), rather than as mere support for Balas's wrongful termination claim (as her original charge suggests).

Balas's complaint regarding the hugging incident (Doc. 1-1 at para. 26) was timely filed with the EEOC,[2] and is properly before the Court. Although this incident was alleged only in connection with Balas's assault and battery claim, the pleadings of *pro se* parties are construed liberally, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007), and the Court may construe this event as part of Balas's Title VII claim.

The jeans incident allegedly occurred in August 2009, more than 300 days before Balas filed her first EEOC charge. Doc. 1-1 at para. 11. While it is arguably related to Balas's timely claim of wrongful termination, the Supreme Court has held that termination is viewed as a "discrete act" that cannot render prior related acts timely. Nat'l R.R. Passenger Corp., 536 U.S. at 115. Therefore, the Court lacks subject matter jurisdiction over this claim.

Balas's other claims of harassment by Price are unrelated to the hugging incident and therefore fall beyond the scope of her EEOC charge. This aspect of the case is similar to Chacko v. Patuxent Institution. There, the plaintiff's EEOC charge alleged that the company director had responded to his complaints of supervisor harassment by "stat[ing] that [he] did not have the right to question Patuxent's policies, and t[elling] him to surrender his bars, take stress leave, or

---

[2] While the dates are ambiguous, this incident occurred no earlier than January 1, 2010, and was filed in the amended EEOC charge no later than October 28, 2010—exactly 300 days after January 1.

7

go to the state medical director." Chacko, 429 F.3d at 507. The plaintiff did not mark the "continuing action" box on the EEOC form. Id. at 511. The Fourth Circuit held that this charge only "alleged a specific harassing act," and did not "suggest[] the long-term harassment that [the plaintiff] sought to prove at trial." Id. Similarly, Balas's allegation that Price "hugg[ed] [her] and thanked [her] for the Christmas cookies [she] gave him as a gift and said [she] never cease[d] to amaze him" (Doc. 7-2), is not suggestive of the long-term sexual harassment alleged in the Complaint (Doc. 1-1 at paras. 7–8, 10). While Balas now makes claims of a hostile work environment, she never indicated in her charges to the EEOC that Price's single hug was part of such an environment, nor did she check the box labeled "continuing violation." Doc. 7-2. A claim that a supervisor gave an employee an unwanted hug in response to a Christmas gift is unlikely to put an employer on notice that the hug was alleged or viewed as a part of a larger sexual pursuit. Chacko, 429 F.3d at 510. Therefore, the alleged harassment by Price, other than the hugging incident, is beyond the scope of Balas's EEOC charges and outside the subject matter jurisdiction of the Court.

Because Balas's EEOC charge fails to allege any harassment by her coworkers, her claims of coworker harassment are also beyond the scope of her EEOC charge. Therefore they fall outside the subject matter jurisdiction of the Court. Id. at 511.

Finally, Balas alleges that that she was terminated "in retaliation for dismissing Mr. Price[']s[] advances, and for her complaints to the defendant[']s[] management." Doc. 1-1 at para. 13. She also claims that she was denied promotions in retaliation for her complaints. Id. at para. 12. In her EEOC charge, Balas checked the "retaliation" box and claimed that she was "discriminated and retaliated against because of [her] sex." Doc. 7-2. Although Balas does not allege any specific retaliatory activity, her charge is "sufficiently precise to identify the parties,

and to describe generally the action" of retaliatory termination so as to put Northrup Grumman on notice of this claim. 29 CFR § 1601.12(a)(3), (b) (2011). However, because termination and failure to promote are viewed as discrete acts, Balas's claim that she was denied promotions in retaliation for her complaints was not within the scope of her EEOC charge, which only objected to her termination. This Court has subject matter jurisdiction over Balas's claim of retaliatory termination, but lacks jurisdiction over her claim of retaliatory failure to promote.

In sum, as to Balas's Title VII claim, only the incident in which Price hugged her in her workspace on January 4, 2010 and her claims of retaliatory termination are properly before the Court. The Court will consider Balas's other allegations as evidence in support of these claims. Evans, 80 F.3d at 962.

### D. MERITS OF THE HARASSMENT CLAIM

Balas contends that Northrup Grumman subjected her to a hostile work environment in violation of Title VII. Doc. 1-1 at paras. 5, 17. As discussed above, the only allegation of harassment that was within the scope of Balas's EEOC charge was the incident in which Price allegedly hugged Balas against her will. Therefore, Balas has stated a claim of sexual harassment under Title VII only if that incident, viewed in light of Balas's other allegations, was sufficient to create a hostile work environment in violation of Title VII.

A claim that sexual harassment created a hostile work environment under Title VII requires the plaintiff to "prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citations omitted). The abusiveness of the work environment is assessed objectively based upon "all of the

circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 333 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). This standard will only be met "where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 316 (4th Cir. 2008) (quoting Jennings v. Univ. of North Carolina, 482 F.3d 686, 695 (4th Cir. 2007) (en banc)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)).

Here, Price's hugging was not "frequent," but was limited to a single incident. His hug constituted physical contact that was humiliating given Price's attitude towards Balas. However, although Balas alleges physical problems that might have interfered with her performance (Doc. 1-1 at para. 28), she connects no negative effects to this particular incident (id. at paras. 25–26). Viewing these factors in light of the totality of the circumstances, this one act could not, by itself, have created a hostile work environment.

Balas raised insufficient incidents of sexual harassment with the EEOC to allege a pervasively hostile work environment. The sole incident alleged, standing alone, is not severe enough to support a hostile work environment claim. Although the Court could liberally construe Balas's assault and battery claim as also constituting an allegation of sexual harassment, this would result in that claim being dismissed on the merits. Jones, 551 F.3d at 301. The better course at this stage is to decline such construction, and to dismiss Balas's remaining hostile work

10

environment claims without prejudice. Cf. Castro v. United States, 540 U.S. 375, 382–83 (2003) (restricting a court's discretion to liberally construe a *pro se* pleading in a manner that risks prejudicing future claims by the litigant).

Accordingly, Huntington Ingalls's Motion to Dismiss is granted as to Balas's allegations of sexual harassment.

## E. MERITS OF THE RETALIATION CLAIM

Balas alleges that she was terminated in retaliation for her internal complaints. Doc. 1-1 at para. 13. "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405–406 (4th Cir. 2005) (citations omitted).

Balas alleges that she complained to Price in August 2009 that his decision to send her home for wearing ripped jeans was discriminatory. Doc. 1-1 at para. 11. This complaint constituted a protected activity. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543–44 (4th Cir. 2003). Additionally, Balas's termination clearly constituted an adverse employment action. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).

To show a causal link between her complaint and her termination, Balas must first allege facts showing that the person who made the decision to terminate her knew of her complaint. See Price v. Thompson, 380 F.3d 209, 212–13 (4th Cir. 2004). Here, Balas's allegation that she was fired by Price—the very person to whom she had complained—establishes that Price knew of her complaint at the time of her termination.

Also, while "the passage of time . . . tends to negate the inference of discrimination," a delay of up to "nine to ten months" is not long enough to do so. Id. at 213 (rejecting summary

11

judgment where "a reasonable trier of fact could conclude that" adverse action was taken "at the first available opportunity," but noting that that was a close case). Balas's termination took place approximately six months after her alleged complaint. Doc. 1-1 at paras. 11, 13. These facts render "plausible" Balas's claim that she was fired by Price in retaliation for her earlier accusation of sex discrimination. Therefore, Balas has stated a claim of retaliatory termination.

## F. CONCLUSION REGARDING TITLE VII CLAIMS

For the foregoing reasons, Huntington Ingalls's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as to Count A of the Complaint. The portion of Count A dealing with sexual harassment and failure to promote is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. However, the portion of Count A alleging retaliatory termination in Count A is not dismissed.

## IV. WRONGFUL DISCHARGE

Virginia adheres to the common law doctrine of at-will employment, and a contract for employment is generally terminable at any time, for any reason, or for no reason at all. Lockhart v. Commonwealth Educ. Sys., 439 S.E.2d 328, 330 (Va. 1994).

In 1985, a narrow exception to this doctrine was recognized: an at-will employee may bring a tortious wrongful discharge claim—a "Bowman claim"—if the termination violates Virginia public policy as expressed in a state statute. Bowman v. State Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1985).

The Bowman court limited this exception to wrongful discharge claims brought pursuant to public policies underlying existing laws "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." Miller v. SEVAMP, Inc., 362 S.E.2d 915, 918 (Va. 1987); see also White v. Fed. Exp. Corp., 729 F. Supp. 1536, 1549–50

(E.D. Va. 1990) (holding that absent the application of a statutory exception to the at-will doctrine, under Virginia law employees may be discharged for any reason, or indeed for no reason, unless the discharge violates Virginia public policy).

Virginia courts recognize three categories of Bowman claims: (a) a discharge that violates a policy enabling the exercise of an employee's statutorily created right, Bowman, 331 S.E.2d at 801; (b) a termination of an employee who was clearly a member of the class of persons directly entitled to the protection enunciated by the public policy, Bailey v. Scott-Gallaher, Inc., 480 S.E.2d 502, 505 (Va. 1997); and (c) a discharge based on the employee's refusal to engage in a criminal act, Mitchem v. Counts, 523 S.E.2d 246, 252 (Va. 2000); see also Rowan v. Tractor Supply Co., 559 S.E.2d 710–11 (Va. 2002).

Accordingly, for Balas's wrongful discharge claim to survive, her Complaint must advance that claim as falling within one of these three narrow exceptions as they are currently construed under Virginia law. Balas contends that her termination "violated the clear public policy articulated in the Virginia Human Rights Act" ("VHRA") Virginia Code §§ 2.1-714 et seq. Doc. 1-1 at 23.

Her reliance upon the VHRA as a basis for the Bowman public policy exception must fail. The Virginia Supreme Court in Doss v. Jamco, Inc., made clear that causes of action based upon public policies reflected in the VHRA shall be exclusively limited to those actions, procedures, and remedies afforded by applicable federal or state civil rights statutes, and that common law causes of action based upon public policies reflected in Act are prohibited. 492 S.E.2d 441, 446–47 (Va. 1997). Price's alleged behavior was lewd, distasteful, and hurtful. However, given the reasoning in Doss, this Court is compelled to conclude that wrongful discharge claims based on public policies expressed in the VHRA simply are not cognizable.

Alternatively, Balas argues that additional sources of public policy support her claim, "including those policies against fornication[] and lewd and lascivious behavior embodied in [Va.] Code §[§] 18.2-344[ to ]-345[,] and against . . . sexual assault." Doc. 11 at para. 4. Price's alleged sexual advances, which Balas claims she was fired for refusing, consisted of frequently discussing "his sex life" with Balas, giving her Valentine's Day candy, stating a desire to hug her, "often get[ting] extremely close to" her, once actually hugging her, soliciting sex from her, and suggesting that he transfer her to another supervisor because of his attraction to her. Id. at paras. 7, 8, 10, 26. She requests leave to amend her Complaint to add those sources of policy, if necessary. Id. at 3 n. 1.

Leave to amend should be freely granted unless: (1) "the amendment would be prejudicial to the opposing party," (2) "there has been bad faith on the part of the moving party," or (3) "the amendment would be futile." Franks v. Ross, 313 F.3d 184, 193 (4th Cir. 2002) (quoting Edwards, 178 F.3d at 242) (internal quotation marks omitted).

At this early stage, there is no evidence that amendment would cause any prejudice. See Edwards, 178 F.3d at 243. Nor is there any evidence that Balas acted in bad faith in failing to raise these policies in her initial Complaint.

The closer question is whether Balas's proposed amendments would be futile because the Complaint, even with the proposed amendments, would remain insufficient to state a claim of wrongful discharge.

As noted above, Balas argues in the alternative that her wrongful discharge claim is supported by Virginia's policies against fornication, lewd and lascivious behavior, and sexual assault, as embodied in state criminal statutes. Doc. 11 at para. 4. She notes that the Virginia Supreme Court has allowed a wrongful discharge action to be brought under the policies

14

reflected in Va. Code § 18.2-344 (banning fornication) and Va. Code § 18.2-345 (banning cohabitation and lewd and lascivious conduct). Id. (citing Mitchem, 523 S.E.2d at 252).

The Virginia Supreme Court in Mitchem held that criminal statutes, such as Va. Code § 18.2-344 to -345 and the statute banning sexual assault, can supply the policy basis for a wrongful discharge action where an employer "seeks to force [his] employees, under the threat of discharge, to engage in criminal activity." 523 S.E.2d at 252. Also, because criminal statutes are intended to protect the general public, an employee is always within the class of persons protected by such statutes. Id. at 252. Balas argues that she was terminated for refusing Price's sexual advances. Doc. 1-1 at para. 13. Thus, Balas could state a claim for wrongful discharge under these criminal statutes only if yielding to Price's advances would have constituted criminal activity in violation of one or more of those statutes.

Mitchem's application of Va. Code §§ 18.2-344 to -345 has been abrogated by the Virginia Supreme Court's more recent ruling in Martin v. Ziherl. 607 S.E.2d 367, 371 (Va. 2005). Martin explicitly struck down § 18.2-344, and implied that sexual activity can be outlawed only if it "involve[s] minors, non-consensual activity, prostitution, or public activity." Id. (citing Lawrence v. Texas, 539 U.S. 558, 564 (2003)).

Nor can Va. Code § 18.2-345 support Balas's claims in light of Martin. This statute makes it illegal for "any persons, not married to each other, to lewdly and lasciviously associate and cohabit together, or, whether married or not," to engage in "open and gross lewdness and lasciviousness." Va. Code § 18.2-345. Here, Price did not propose any cohabitation, and the only public sexual activity that he proposed did not go beyond hugging and sex-related conversation among adults (Doc 1-1 at paras. 7, 26), neither of which approaches the sort of "gross lewdness" prohibited by § 18.2-345. Cf. Johnson v. Commonwealth, 146 S.E. 289, 291

(Va. 1929) (finding common-law "gross lewdness" where defendants left used condoms and written obscenities in a schoolhouse). While there was once Virginia precedent that even private conduct, such as Price's proposed sexual encounter, can constitute "open and gross lewdness" if it becomes public knowledge, id.; see Mitchem, 523 S.E.2d at 252, these holdings are abrogated by Martin's ruling that such restrictions are unconstitutional, cf. Martin, 607 S.E.2d at 371 (abrogating Zysk v. Zysk, 404 S.E.2d 721 (Va. 1990), on similar grounds).

In short, the Virginia Supreme Court's holding in Mitchem, allowing wrongful discharge actions under Va. Code §§ 18.2-344 to -345 where the plaintiff was allegedly fired for refusing to engage in private sexual activity with a supervisor, has been abrogated by that Court's ruling in Martin that it would not be illegal for the employee to engage in such activity.

Nor does Mitchem allow such a claim under the statute banning sexual battery. In Mitchem, the plaintiff "alleged that she was fired for refusing to 'consent to commission of a battery upon her person.'" Mitchem, 523 S.E.2d at 252–53. The court reasoned that "had the plaintiff consented to having the employer touch her, there would have been no crime of battery." Id. at 253. Thus, the plaintiff was not fired for refusing to be involved in a battery. Id.

Accordingly, the statute against sexual battery does not apply to consensual sexual activity (except in certain prison cases not relevant here). Va. Code § 18.2-61. Had Balas consented to Price's advances, there would have been no sexual battery under § 18.2-61. Therefore, Balas cannot claim that she was fired for refusing to be complicit in sexual battery, as required when invoking a criminal statute under Mitchem.

Therefore, even if Balas amended her Complaint to include the statutes she refers to in her brief, the amendment would still fail to state a claim of wrongful discharge upon which relief could be granted, rendering her proposed amendment futile.

Gender discrimination should not be countenanced in any manner and victims of such discrimination should be accorded a tort remedy that fully and fairly compensates them for injuries caused by an employer's repugnant conduct. As [the Virginia Supreme] Court recognized in Lockhart v. Commonwealth Educ. Sys., . . . 439 S.E.2d 328, 331 ([Va.] 1994):

"Without question, it is the public policy of this Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender. Indeed, racial or gender discrimination practiced in the work place is not only an invidious violation of the rights of the individual, but such discrimination also affects the property rights, personal freedoms, and welfare of the people in general."

However, the General Assembly of this Commonwealth has chosen to impose limitations on the right of a woman to recover damages against an employer who discriminates against her because of her gender. See [Va.] Code §§ 2.1-714, et seq. And, this Court, which does not, and constitutionally cannot, act as a super-legislative body, is required to apply these restrictions as expressed by the General Assembly. For this reason solely, I am compelled to concur with the . . . opinion [that the VHRA does not provide a cause of action for wrongful discharge].

Conner v. Nat'l Pest Control Ass'n, Inc., 513 S.E.2d 398, 400 (1999) (Hassell, J., concurring);

accord Mitchem, 523 S.E.2d at 256 (Kinser, J., dissenting).

In sum, Balas's reliance upon the VHRA and criminal statutes is unavailing. The VHRA does not provide a cause of action for wrongful discharge, Doss, 492 S.E.2d at 446–47, the statutes relied upon in Mitchem have been struck down or limited, see Martin, 607 S.E.2d at 371, and the sexual battery statute does not apply, Mitchem, 523 S.E.2d at 252–53. Despite the evident pain behind Balas's allegations of suffering as a result of reprehensible behavior from her employer, neither the Virginia General Assembly nor the Supreme Court of Virginia now recognizes a policy exception that would permit her wrongful discharge claim to survive.

Because Balas's proposed amendment to her Complaint would be futile, Balas's request for leave to amend is **DENIED**, Huntington Ingalls's Motion to Dismiss is **GRANTED** as to Count B of the Complaint, and Balas's claim of wrongful discharge is **DISMISSED WITH PREJUDICE**.

## V.  ASSAULT AND BATTERY

In Count C[3] of her Complaint, Balas argues that Price committed assault and battery against her when he hugged her in her workspace.  Doc. 1-1 at para. 26.  Under Virginia common law, "[t]he tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery."  Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003) (citing Restatement (Second) of Torts §21 (1965)).  "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified."  Id. (citation omitted).  Here, Balas has alleged that Price "hugg[ed] her against her will," which is sufficient to constitute the tort of battery.  Additionally, it can be reasonably inferred from Balas's statement that she was "*trapp[ed]* . . . in her work space" (emphasis added) that she knew that Price was about to hug her, that she was placed in apprehension of that allegedly offensive touching, and that Price intended such apprehension.  Therefore, Balas has properly alleged that Price committed assault and battery against her.

In order for an employer to be liable for the intentional torts of its employees, the plaintiff must prove that (1) the tortfeasor was an employee of the defendant, and (2) that employee was acting within the scope of his or her employment at the time the tort was committed.  Gina Chin & Assocs., Inc. v. First Union Bank, 537 S.E.2d 573, 578–79 (Va. 2000).  While the plaintiff bears the ultimate burden of persuasion as to the second prong, "proof of the employment relationship creates a prima facie rebuttable presumption of the employer's liability."  Id. at 577 (citation omitted).  Here, Balas has pled facts indicating that Price was an employee of Northrup Grumman.  Doc 1-1 at paras. 7, 26.  This is sufficient to state a prima facie claim of vicarious liability.

---

[3] This is the first of the two counts listed as Count "C," encompassing paragraphs 25–26.

Huntington Ingalls does not challenge the sufficiency of Balas's allegations, but argues that her claim is precluded by the Virginia Workers' Compensation Act ("VWCA"). Doc. 7 at 9. Balas counters that the VWCA is inapplicable because Huntington Ingalls admitted in its Answer that Price was not acting within the scope of his employment when he hugged her. Doc. 11 at para. 6. Huntington Ingalls also argues that the facts stated in Balas's October 2, 2010 letter to the EEOC establish that the hug was consensual and did not constitute an assault or battery. Doc. 11 at 6–7.

Balas's letter to the EEOC is beyond the Court's consideration in a motion for judgment on the pleadings. In deciding a motion for judgment on the pleadings, the Court cannot consider matters outside the pleadings. See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 450 (4th Cir. 2011). While exhibits attached to the Complaint are construed as part of the Complaint for purposes of such a motion, the Court cannot consider exhibits attached to a brief on the motion itself unless they are "integral to and explicitly relied on in the [C]omplaint." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Therefore, these letters are beyond the Court's consideration at this time. [4]

Nevertheless, it is permissible for Huntington Ingalls to argue that (1) Price was not acting within the scope of his employment, and also (2) even if Price were acting within the scope of his employment, Balas's claim arose out of her employment and is barred by the VWCA. See Fed. R. Civ. P. 8(d)(2), (3) (allowing argument in the alternative). The test for determining whether a tort was committed within the scope of the tortfeasor's employment as

---

[4] While Balas's EEOC filings were considered above in deciding whether she had exhausted her administrative remedies, that discussion dealt only with questions of what Balas had alleged, and did not rely on the accuracy of those allegations. A court may take judicial notice of the existence and contents of EEOC proceedings, if necessary to decide issues like exhaustion of administrative remedies. See, e.g., Bonds, 629 F.3d at 378–80 (discussing the contents of the plaintiff's EEOC charges). However, a court may not judicially notice the *truth* of matters outside the challenged pleading. E.I. du Pont de Nemours & Co., 637 F.3d at 450; cf. 21B Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence § 5106.4 (2d ed. 2011) (stating that courts may take judicial notice of the content other judicial proceedings, but not the truth of such proceedings).

required for vicarious liability is distinct from the test for determining whether it arose out of the plaintiff's employment as required by the VWCA. Compare Gina Chin, 537 S.E.2d at 577–78 (vicarious liability) with Richmond Newspapers v. Hazelwood, 457 S.E.2d 56, 58 (Va. 1995) (VWCA).

As noted, Huntington Ingalls argues that Balas's exclusive remedy for this claim lies with the VWCA. Doc. 7 at 9. A claim is within the exclusive jurisdiction of the VWCA "if it results from an accident arising out of and in the course of the injured employee's employment." Simms v. Ruby Tuesday, Inc., 704 S.E.2d 359, 362 (Va. 2011) (citations omitted).

An assault is considered an "accident" for purposes of the VWCA. See Hilton v. Martin, 654 S.E.2d 572, 574 & n. 2 (Va. 2008) (collecting cases). Balas has alleged that the tort took place during the course of her employment. See Doc. 1-1 at para. 26 (alleging that Price trapped Balas "in her work space"). However, it is well established in Virginia that an assault does not "arise out of" a plaintiff's employment if the assault is personal to the plaintiff. Richmond Newspapers, 457 S.E.2d at 58 (collecting cases). Here, the Complaint makes numerous allegations that Price was romantically interested in Balas. Doc. 1-1 at paras. 7, 8, 10. Price's only alleged sexual conduct toward other female employees was limited to discussing his sex life with one of Balas's coworkers. Id. at para. 7. This indicates that the alleged battery was personal to Balas and did not arise out of her employment. Therefore, Balas's claim of assault and battery is not barred by the VWCA.

Because Balas's allegations are sufficient to assert a claim of assault and battery that is not precluded by the VWCA, Huntington Ingalls's Motion to Dismiss is **DENIED** as to Count C[5] of the Complaint.

---

[5] As noted previously, this is the first of the two counts listed as Count "C," encompassing paragraphs 25–26.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Balas's final claim is for intentional infliction of emotional distress. Doc. 1-1 at paras. 27-28. Under Virginia law, a plaintiff claiming intentional infliction of emotional distress must prove four elements: "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 343 (Va. 2008) (citations omitted).

Huntington Ingalls argues that the conduct alleged by Balas was not "outrageous or intolerable," and that her symptoms ("humiliation, embarrassment, sadness, fear, worry, shame, lack of concentration, sleeplessness, nervousness, . . . stress[,] . . . borderline hypertension [that] requir[ed] medical attention[,] . . . loss of enjoyment of life, [loss of] societal standing," and the need to "take several medications daily" (Doc. 1-1 at para. 28)) are insufficiently extreme to constitute severe emotional distress. Doc. 7 at 7–8.

The standard of "intentional or reckless" conduct requires that the defendant either "had the specific purpose of inflicting emotional distress or . . . intended his specific conduct and knew or should have known that emotional distress would likely result." Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974). Balas fails to plead that Northrup Grumman intended to cause her emotional distress or that it knew or should have known that such distress would result. Her only assertion supporting this element was that its conduct was "reckless, continuous and outrageous." Doc. 1-1 at para. 28. Conclusory allegations of recklessness are insufficient under Virginia law. See Ely v. Whitlock, 385 S.E.2d 893, 897 (Va. 1989) (holding that allegations that a party's "statements and conduct . . . were made and carried out by her intentionally and/or recklessly" were too conclusory to support a claim for intentional infliction of emotional

21

distress). Nor can a liberal construction of Balas's *pro se* filing rectify this error. <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002) (indicating that even in a *pro se* case, conclusory allegations are not accepted as true when deciding whether the plaintiff had stated a claim) (citations omitted). Therefore, Balas has not properly pled the first element of intentional infliction of emotional distress.

Nor can Balas meet the second requirement for claiming intentional infliction of emotional distress, which requires allegations of conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Russo v. White</u>, 400 S.E.2d 160, 162 (Va. 1991) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). It is not enough that the defendant acted with malice or intent to cause distress. <u>Id.</u> Nor is conduct that is "boorish, inappropriate, [or] actionable under Title VII" sufficient. <u>Glover v. Oppleman</u>, 178 F. Supp. 2d 622, 643 (W.D. Va. 2001).

In this case, Northrup Grumman's alleged misconduct consisted of offensive sexual statements and unwanted hugging by Balas's supervisor, and retaliation against her for her complaints. Even if Balas had properly alleged that Northrup Grumman's conduct was reckless or intentional, this conduct is insufficiently outrageous to support a claim for intentional infliction of emotional distress. <u>See</u> <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 103 (4th Cir. 1989), <u>vacated in other parts and rev'd in part on other grounds</u>, 900 F.2d 27 (4th Cir. 1990) (en banc) (per curium) (conduct was insufficiently outrageous where supervisor made sexual remarks to plaintiff, rubbed his hands on her back despite her protests, and forcibly hugged and kissed plaintiff despite her protests); <u>Glover</u>, 178 F. Supp. 2d at 627–28 (conduct was insufficiently outrageous where supervisor made incessant sexual remarks and advances towards plaintiff and

her coworkers, implied that she could be fired if she refused his advances, put his arm around her shoulders, repeatedly kissed her cheek and touched her thigh, and had a coworker measure her bust size). But cf. Speight v. Albano Cleaners, Inc., 21 F. Supp. 2d 560, 565 (E.D. Va. 1998) (conduct was sufficiently outrageous where supervisor reached inside plaintiff's dress and touched her buttocks directly and attempted on another occasion to grab her breasts).

Therefore, Huntington Ingalls's Motion to Dismiss is **GRANTED** as to Count D[6] of the Complaint, and Balas's claim of intentional infliction of emotional distress is **DISMISSED WITH PREJUDICE.**

## VII.  CONCLUSION

Huntington Ingalls's Motion to Dismiss is **DENIED** as to Count C of the Complaint (assault and battery) and as to the portion of Count A of the Complaint alleging retaliatory termination, and **GRANTED** as to Balas's remaining clams.  Additionally, Balas's request to amend Count B of her Complaint (wrongful discharge) is **DENIED** as futile.

Accordingly, Count A of the Complaint (paras. 14–21), except insofar it alleges retaliatory termination, is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Counts B and D[6] of the Complaint (paras. 22–24, 27–28), respectively, are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

September 26, 2011
Norfolk, Virginia

---

[6] As previously noted, due to an apparent typographical error, this count is erroneously enumerated as a second Count "C" in the Complaint, encompassing paragraphs 27–28.