UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
JAN 18 2012
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

KAREN B. BALAS,

**Plaintiff,**

v.  Civil Action No. 2:11cv347

HUNTINGTON INGALLS INDUSTRIES, INC.,

**Defendant.**

## OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment (Docs. 16, 19), and a Motion for Reconsideration (Doc. 21).

On May 23, 2011, Plaintiff Karen B. Balas filed this suit in state court alleging sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliatory termination under Title VII, wrongful discharge, assault and battery, and intentional infliction of emotional distress. All of these claims stem from allegations that Balas was sexually harassed by her supervisor, Bradley Price, and terminated for opposing that harassment. Defendant Huntington Ingalls Industries ("Huntington Ingalls") properly removed the case to this Court on June 21, 2011.

On September 26, 2011, the Court dismissed Balas's claim of sexual harassment because she had not properly raised that issue with the Equal Employment Opportunity Commission ("EEOC"), as is required by Title VII. Specifically, while Balas discussed several allegedly harassing acts in letters she sent to the EEOC, the Court found that her actual filings with the EEOC did not support a claim of sexual harassment. The Court further dismissed Balas's claims

1

of wrongful discharge and intentional infliction of emotional distress for failure to state a claim. Therefore, only her claims of retaliatory termination and assault and battery remain before the Court.

On November 29, 2011, Huntington Ingalls moved for summary judgment as to these remaining claims. On December 15, 2011, Balas filed her response to this motion, as well as her own motion for summary judgment as to the claim of assault and battery. The Court has received all timely responses and replies to these motions. Therefore these motions are now ripe for decision.

## I. FACTUAL BACKGROUND

The facts as agreed to by the parties (with points of disagreement noted) are as follows:

Balas worked for Northrup Grumman Industries ("Northrup Grumman"), predecessor to Huntington Ingalls, from 1981 to around 1988, and again starting around 1998. Balas "completed an Anti-Harassment training course and a Time and Labor Charging training course on January 23, 3009." Doc. 17 at 3. The latter course provided warnings against incorrect time charging, instructing that violations could result in termination. Huntington Ingalls's "Yard Regulations" prohibited falsification of company records, and similarly warned that violations could result in termination.

In August 2009, Balas went to work wearing ripped jeans. Upon receiving a complaint that the jeans were inappropriate, Price asked Balas to go home and change her clothes. Balas asserts that Price did not require her to clock out. Upon returning, Balas told Price that this request was discriminatory, because men wore ripped jeans to work without repercussions.

Balas and Price developed a personal relationship in which they shared confidences and discussed personal issues that they did not share with other workers. For example, Balas told

Price that she was getting a separate residence from her husband and wanted to date other men. Balas contends that Price also solicited sex from her and commented on her physical appearance, and that once he ran up behind her as though he was going to ram her in the buttocks.

After learning that Price had received custody of his son, Balas came to the office during her holiday vacation and dropped off some cookies for the child. When Balas returned from her vacation on January 4, 2010, Price hugged Balas in her workspace while she was rising from her chair. The hug was brief, and at the time Balas did not verbally object or indicate that the hug was unwanted.

Although the parties agree about the actions involved in this incident, they disagree considerably about how it was perceived by the parties involved: Huntington Ingalls asserts that this hug was motivated by Price's gratitude for the cookies, and argues that Balas revealed in her deposition testimony that her primary objection to the hug was only that it was physically uncomfortable to her. Balas responds that she suspects that the hug stemmed from improper motives and that it surprised her. The parties agree that the hug made Balas uncomfortable because she couldn't physically distance herself from Price.

On February 11, 2010, Balas and a coworker, Whitney Lassiter, left work for a lunch break. The two remained away from the office for an hour and forty-one minutes. Balas did not clock out when she left, and instead deducted only half an hour for lunch. Balas testified in her deposition that she later realized her mistake and subtracted an additional hour from her records. Huntington Ingalls's records suggest that Balas subtracted only an additional thirty minutes, resulting in an unauthorized absence of forty-one minutes.

Northrup Grumman later investigated the incident and concluded that Balas had taken two hours for lunch. Balas was confronted about this on February 17, 2010. After an interview,

Balas and Lassiter were terminated, ostensibly in response to the above time-charging inaccuracies. It is undisputed that Price never informed the decision makers who fired Balas of Balas's prior complaint that his decision to make her change her jeans was discriminatory.

## II. MOTION TO RECONSIDER

Balas moves the Court to reconsider its dismissal of her claims of sexual harassment under Title VII. Doc. 21. Federal Rule of Civil Procedure 54(b) allows the Court to revise its prior decisions "at any time before the entry of a judgment adjudicating all the claims." However, reconsideration is rare, and only is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension," or where there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

Balas makes no argument that would merit reconsideration of the Court's earlier decision. Therefore, Balas's Motion to Reconsider is **DENIED**.

## III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

A. STANDARD OF LAW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247–48 (1986).

Furthermore, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered by a court in its determination. Id. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). At that point, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In doing so, the Court must construe the facts in the light most favorable to the non-moving party, and may not make credibility determinations or weigh the evidence. Id. at 255; Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted).

## B. RETALIATORY TERMINATION

Huntington Ingalls moves for summary judgment as to Balas's claim of retaliatory termination. "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005) (citations omitted).

Here, the protected activity alleged by Balas is complaining to Price about the jeans incident, and the adverse employment action is her termination. To prevail on her claim of retaliatory termination, Balas must demonstrate that a causal link existed between her complaint

and her termination. Balas fails to establish this link because the person who made the decision to terminate her did not know of her complaint. See Price v. Thompson, 380 F.3d 209, 212–13 (4th Cir. 2004).

In her response, Balas concedes that the persons responsible for terminating her were never told of her complaint.[1] Doc. 22 at 3. Nevertheless, Balas argues that Price influenced her termination because he recommended that Lassiter not be rehired and, Balas assumes, likely made a similar recommendation with respect to Balas. In short, Balas argues that a reasonable jury could infer that because Price recommended that Lassiter not be rehired, he likely also influenced the decision to fire Balas. This evidence is, at best, "merely colorable" evidence of Price's possible influence over Balas's termination, and cannot, by itself, establish that her termination was caused by her complaint.

Therefore, Balas has not presented evidence of a causal link between her complaint and her termination. Huntington Ingalls's Motion for Summary Judgment is **GRANTED** as to Count A of the Complaint.

### C. ASSAULT AND BATTERY

The parties have filed cross motions for summary judgment regarding Balas's claims of assault and battery. These claims stem from Price's hug of Balas on January 4, 2010.

Under Virginia law, "a battery consists of contact done in a rude, insolent, or angry manner, which is neither consented to, excused, nor justified." Simms v. Ruby Tuesday, Inc., 704 S.E.2d 359, 364 (Va. 2011) (Mims, J., concurring) (citations and internal quotation marks omitted). Balas testified that the hug was rude or insulting because it was difficult for Balas to pull away. Doc. 17-1 at 34. However, Balas never objected to or otherwise attempted to avoid the hug. Nor is there evidence that the hug was suggestive or that there was anything physically

---

[1] This admission is supported by the undisputed evidence. See doc. 17-12 at para. 6; doc. 17-13 at para. 7.

unusual about it other than Balas's receiving it while partially standing. Given the brevity of the hug, together with Price's contemporaneous expression of gratitude, there is no evidence that the hug was objectively rude or insulting, even between people who shared the kind of relationship that Balas and Price did.[2] Therefore, Balas's claim of battery is unsupported.

As to the claim of assault, "an assault is an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in [another's] mind a reasonable apprehension of an imminent battery." Simms, 704 S.E.2d at 364 (Mims, J., concurring) (citations and internal quotation marks omitted). Balas claims that Price intended to cause, and place Balas in apprehension of, the hug. As discussed above, the evidence shows that the hug was not a harmful or offensive contact. There is no evidence that Price intended the hug to involve any contact beyond the hug itself or that he intended to make Balas fear that it would. Therefore, the evidence cannot support Balas's claim of assault.

Accordingly, Huntington Ingalls's Motion for Summary Judgment is **GRANTED** as to Count C[3] of the Complaint and Balas's Motion for Partial Summary Judgment is **DENIED**.

## IV. CONCLUSION

Although the harassment that Balas alleges she suffered from Price is reprehensible, the redress that Balas seeks must first be submitted to the EEOC in a timely manner. Balas failed to raise her claim of sexual harassment until after she was terminated, and then did so only in collateral support of her retaliatory termination claim. Regrettably, Balas's strongest claim was

---

[2] Although not binding as precedent, the Court notes that this issue has come before it in the past. Dixon v. State Farm Fire & Cas. Ins. Co., No. 4:94cv165, 1995 WL 810016 (E.D. Va. Aug. 23, 1995) (unpublished) (adopting the magistrate judge's report and recommendation). In that case, the plaintiff's supervisor allegedly hugged him three times, during a period in which the supervisor made repeated sexual overtures to the plaintiff. Id. at *2. The Court held that these allegations failed to state a claim upon which relief could be granted, stating that it could not "perceive anything rude, insulting, or angry in a hug." Id. at *12. While the Court does not rely on Dixon in reaching its holding today, the Court notes its agreement that a simple hug, without more, is insufficient to constitute a battery, even where the parties to the hug have a history of potential sexual harassment.

[3] As noted in the Court's earlier opinion, this is the first of the two counts listed as Count "C" in the Complaint, encompassing paragraphs 25–26. The other Count "C" was dismissed for failure to state a claim.

improperly presented, and her remaining claims are mere shadows of that claim. The evidence in this case may have supported a timely, properly presented sexual harassment claim, but it is insufficient to support claims of retaliatory termination or assault and battery.

Therefore, for the foregoing reasons, Balas's Motion for Reconsideration (Doc. 21) and Motion for Partial Summary Judgment (Doc. 19) must be **DENIED**.

Huntington Ingalls's Motion for Summary Judgment (Doc. 16) is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

Balas has also filed a Motion to Consolidate Cases (Doc. 18) and a Motion for Issuance of Subpoenas (Doc. 29). Because the case is dismissed with prejudice, these motions are **DENIED AS MOOT**.

The Clerk is **REQUESTED** to forward a copy of this Order to all parties.

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

January 18, 2012
Norfolk, Virginia

8